IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-03017-RBJ

JOHNNY HOPE,

      Plaintiff,

v.

CAROLYN W. COLVIN[1], Acting Commissioner of the Social Security Administration,

      Defendant.

---

## ORDER

---

      This matter is before the Court on review of the Commissioner's decision denying plaintiff Johnny Hope's application for disability insurance benefits pursuant to Title II of the Social Security Act.  Jurisdiction is proper under 42 U.S.C. § 405(g).  This dispute became ripe for decision by this Court on June 6, 2013 upon plaintiff's filing of a reply brief.  The Court apologizes to the parties and counsel for its delay in addressing the case.

**Standard of Review**

      This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards."

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and thus her name is substituted for that of Michael J. Astrue as the defendant in this suit. Fed.R.Civ.P. 25(d)(1).  By virtue of the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this lawsuit.

*Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998).  A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record. . . ." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988).  Substantial evidence requires "more than a scintilla, but less than a preponderance."  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Evidence is not substantial if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

### Procedural History

Mr. Hope first applied for disability benefits on February 11, 2010.  R. 33.  He alleges he first became disabled in September 2009 when he suffered an on-the-job injury to his left shoulder and arm.  R. 152, 185.  He later added additional alleged impairments including diabetes, carpal tunnel syndrome, gout, peripheral neuropathy, neck pain, depression, and sleep issues.  The Social Security Administration initially denied his application for disability on July 13, 2010.  R. 33.  Mr. Hope then requested a hearing before an administrative law judge (ALJ), and the ALJ held a hearing on August 18, 2011.  On September 19, 2011, ALJ Burgchardt issued an opinion denying benefits.  Mr. Hope then appealed the ALJ's decision to the Appeals Council, and he submitted additional evidence for the Council's review.  The Appeals Council denied Mr. Hope's request for review on September 28, 2012  Thereafter he filed a timely appeal with this Court.

### Facts

Mr. Hope has worked as a construction worker, shredding machine operator, and truck driver.  R. 77, 187.  Back in September 2009, a heavy piece of metal struck Mr. Hope in his left shoulder and arm, injuring him on the job.  R. 351.  Initial imaging revealed tendinopathy in the left shoulder, and when the joint failed to improve significantly by October 2009, Mr. Hope

underwent surgery.  R. 256-57, 288.  The surgery and ensuing physical therapy led Mr. Hope to

report that he was "70%" better than before surgery.  R. 359, 367.  This conclusion was bolstered

by the evaluation of Mr. Hope's surgeon, Dr. Michael Simpson, who observed that Mr. Hope

was experiencing less pain and was continuing to improve with therapy.  R. 285.  He indicated

that Mr. Hope could return to work "without repetitive overhead lifting by February of 2010."

R. 37.  Two separate functional capacity evaluations in January 2010 released Mr. Hope to return

to work at the light exertional level with some restrictions on lifting, carrying, and pushing and

pulling more than 25 pounds.  R. 304, 308.

Another capacity assessment prepared by Mr. Hope's physical therapists in February

2010 released him to return to light to medium exertional work with the ability to carry 40

pounds and occasionally reach and handle with the upper left extremity.  The therapists

concluded, however, that Mr. Hope could not repetitively reach overhead with the upper left

extremity.  R. 266.  And that same month, Dr. Anjmun Sharma prepared materials for Mr.

Hope's worker compensation claims, stating therein that Mr. Hope was permanently restricted

from lifting, carrying, pushing, or pulling more than 40 pounds, or lifting more than 20 pounds

overhead.[2]  R. 390.  A state agency physician, Dr. Alicia Blando, offered a similar assessment in

July 2010, adding that Mr. Hope could stand and walk about six hours in a workday and sit for

about six hours per workday.  R. 96.  She noted that Mr. Hope could not reach in front or

overhead with his left upper extremity, but she did not notice any limitation on gross

manipulation, fine manipulation, or feeling in that extremity.  R. 97.

---

[2] In addition to occasionally receiving worker's compensation benefits since his injury, Mr. Hope
received unemployment benefits in 2010 and 2011.  R. 52-53.

Mr. Hope has also been diagnosed with diabetes which, according to his physicians, is well controlled with oral medication and diet. R. 447-49, 513. He was also diagnosed with gout after reporting to the Mission Medical Clinic with pain in his groin, leg, and knee. R. 465, 483.

Mr. Hope returned to his doctors in January 2011 for further evaluation of his left shoulder and arm. Tests revealed a "significant tear of the supraspinatus tendon in [Mr. Hope's] left shoulder, capsulitis and an ossified ligament." R. 523. Dr. Simpson recommended a second surgery to repair the tear. Yet another physician, Dr. Timothy Hart, diagnosed Mr. Hope with carpal tunnel of the left hand later in February. R. 555.

Around the same time, a consultative examination in March 2011 with Dr. Dowin Boatright yielded the following capacity assessment: Mr. Hope had full strength in his upper and lower extremities, could sit, stand, or walk for six to eight hours, and lift ten pounds continuously, fifteen pounds frequently, and twenty pounds occasionally. R. 495-97. Dr. Boatright also concluded that Mr. Hope could reach, handle, finger, feel, push, and pull with his left hand but could not reach over head with that extremity. R. 498. He also found no postural limitations on Mr. Hope's abilities. R. 499.

Mr. Hope underwent the second surgery to repair his shoulder at the end of March 2011. R. 557-59. After the surgery, Mr. Hope underwent a second evaluation with Dr. Goldman in relation to his worker's compensation claim. Dr. Goldman noted that Mr. Hope reported some difficulty with daily activities and exhibited mild to moderate pain behaviors, but also that Mr. Hope reported being able to sit for one hour at a time, stand or walk for 15 minutes at a time, and drive for 30 minutes at a time. R. 538-39. Ultimately Dr. Goldman concluded that Mr. Hope had about the same impairment rating as originally provided by Dr. Sharma and that he could probably return to some type of modified light duty work within several months and to medium

work within a year.  R. 542-45.  He further noted that Mr. Hope could return to sedentary work within a few weeks as long as he didn't need to use his left hand other than as an assist and did not need to do significant overhead reaching.  *Id.*

Sometime in 2011, Mr. Hope began reporting "lower extremity pain" and believed the pain was a result of polio he claimed he had suffered as a child.  Dr. Boatright thought these symptoms might indicate post-polio syndrome, but another examining physician, Dr. Mary Eulberg, hypothesized that it was more likely neuropathy associated with Mr. Hope's diabetes. R. 571.  Dr. Eulberg determined the following functional limitations: Mr. Hope could stand for 10 minutes at a time, up to one hour per workday; walk no more than five to ten feet without assistance from a cane or other device; walk no more than one block at a time and not more than a mile per workday; not climb ladders; not climb more than one flight of stairs at a time and no more than two flights per workday; not carry more than 10 pounds on an infrequent basis; not do fine finger manipulation with his left hand; not reach over mid-chest height with his left upper extremity; and not operate a motor vehicle for more than 20 minutes at a time and never when needing to see behind the vehicle without adaptive devices.  R. 571.

Mr. Hope's own assertions about his abilities and daily activities are not remarkably different from the conclusions of his physicians.  For example, he states that a normal day includes walking, watching television, reading, doing light chores, and exercising.  R. 210, 212. He also claims that he is able to go grocery and clothes shopping.  R. 213.  And while he did indicate trouble lifting, bending, reaching, sitting, stair climbing, completing tasks, concentrating, and using his hands, he has not indicated problems squatting, standing, walking, kneeling, or remembering.  R. 215.

<u>Hearing</u>

The hearing before ALJ Burgchardt began about ten minutes late.  The ALJ reminded everyone that her next hearing was scheduled to begin in less than an hour.  Near the end of the hearing, the ALJ interrupted Mr. Hope's testimony and the following exchange took place.

> ALJ: I have my next hearing at 2:30.
> Atty: We're about done.
> ALJ: Oh, ok, so we still have VE testimony --
> Atty: Well I know, but I'm about done with his testimony, but thank you.  I'll try not to hold you up.
> ALJ: No, go ahead.

R. 75.  Then, during the vocational expert's testimony, the ALJ interjected "this is going to be your last question" to Mr. Hope's attorney.  R. 84.  The attorney added a restriction to the hypothetical question, received the expert's answer, and concluded "That's i[t], your honor."[3]  R. 85.  There was neither an objection nor indication that counsel wished to ask additional questions.

<u>ALJ's Opinion</u>

The Social Security Administration uses a five step process to determine whether a claimant qualifies for disability insurance benefits.  At step one, the ALJ determined that Mr. Hope had not engaged in substantial gainful activity since September 17, 2009 (his alleged onset date).  At step two, the ALJ found that Mr. Hope suffered from the following severe impairments: injury to the left shoulder, diabetes mellitus with questionable peripheral neuropathy, gout, and carpal tunnel syndrome.  R. 35.  She also noted that Mr. Hope claimed he suffered from depression, but due to the absence of any treatment for that condition the ALJ

---

[3] This Court agrees with the government that the transcript contains a typographical error here. "That's is, your honor" does not make sense grammatically or in the context of the hearing. Gov't Br. 15 n.6.

declined to label it "severe." R. 35-36. At step three, the ALJ determined that none of these

impairments—alone or in combination—met or medically equaled one of the listed impairments.

At step four, the ALJ noted that Mr. Hope is unable to perform any of his past relevant

work, but the ALJ nonetheless decided that Mr. Hope had a residual functional capacity ("RFC")

to

> perform light work as defined in 20 C.F.R. 404.1567(b) with the following
> limitations: claimant could lift or carry ten pounds frequently and twenty pounds
> occasionally with his dominant right hand using the left hand and arm only as an
> assist; could stand and/or walk, with normal breaks, for a total of six hours in an
> eight hour workday; could sit, with normal breaks, for a total of six hours in an
> eight hour workday; could perform pushing and pulling motions with his upper
> and lower extremities within the aforementioned weight restrictions but should
> avoid pushing and pulling with his left upper extremity, using his left hand,
> shoulder and arm only as an assist; should avoid unprotected heights, moving
> machinery and vibrations; could occasionally perform the postural activities of
> kneeling and crawling; could occasionally climb ladders, ropes and scaffolds and
> could occasionally reach with the left non-dominant upper extremity and only as
> an assist.

R. 36.

In reaching this conclusion, the ALJ decided that "claimant was not credible" in his

description of the intensity, persistence, and limiting effects of his alleged symptoms. R. 37.

According to the ALJ, Mr. Hope's testimony was inconsistent with the medical evidence in the

record as well as Mr. Hope's own description of his activities: preparing easy meals, grocery

shopping, walking for exercise, doing crossword puzzles, reading a lot, driving rarely, and

occasionally socializing with friends. R. 37 (citing hearing testimony). There was no

assessment by treating physician that would be entitled to controlling weight, so the ALJ focused

on the longitudinal treatment records. R. 38-39. The assessments of examining physicians and

Mr. Hope's physical therapist were considered, but Dr. Eulberg's conclusions were given little

weight since they were not supported by objective examination findings or the longitudinal

treatment records which depicted a claimant with a higher ability to function.  Great weight was given to the opinions of Drs. Boatright, Polanco, and Goldman because of their consistence with the record and basis in objective examination data.

At step five, the ALJ asked a vocational expert to opine about the employment opportunities available to a hypothetical person with the residual functional capacity assigned to Mr. Hope.  The expert indicated that such a person would be able to find employment in the national economy as an office helper, an information clerk, or a parking lot attendant and accordingly, the ALJ concluded that Mr. Hope was not entitled to disability benefits under the Act.  R. 40.

Additional Evidence to the Appeals Council

After the negative disability determination from the ALJ, Mr. Hope submitted additional evidence to the Appeals Council.  This additional evidence included updated physical therapy records and a new worker's compensation evaluation from Dr. Polanco.  The physical therapy records indicated that Mr. Hope's pain was being adequately controlled by medication and his strength was improving.  R. 597, 599.  A functional capacity evaluation by therapist Gail Gerig in July 2012 indicated decreased strength in the left extremity but an absence of numbness or tingling.  R. 9-11.  Ms. Gerig concluded that Mr. Hope could work at a less than sedentary level. R. 15-17.  Dr. Polanco's evaluation from January 2012 found, at worst, moderate impairment in Mr. Hope's activities of daily living, mild impairment in certain social activities, and no impairment in thinking, concentration, or judgment.  R. 629-630.  The Appeals Council declined to reverse the ALJ's decision based on this evidence.  R. 1-3.

**Analysis**

Mr. Hope makes essentially three arguments on appeal: (1) that the ALJ violated his right to due process by cutting short his ability to question witnesses at the hearing (in Mr. Hope's reply brief this argument morphs into an argument that the ALJ failed adequately to develop the record); (2) that the ALJ's RFC is not founded on substantial evidence; and (3) that the new evidence he supplied to the Appeals Council undermines the ALJ's decision.  This court finds all three arguments unpersuasive.

<u>Due Process Concerns at the Hearing</u>

Mr. Hope initially claimed that the ALJ violated his due process rights by ending the hearing without "sufficient time . . . to fully explore the issues pertinent to whether, at Step 5 of the sequential evaluation process, there were other jobs available within [his] residual functional capacity."  Pl.'s Br. 5.  He cites regulations stating that "a claimant or representative is entitled to conduct such questioning [of witnesses] as may be needed to inquire fully into the matters at issue."  Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-6-60(B), 1993 WL 751900.[4]  In his reply brief, Mr. Hope switches gears, conceding that the events at the hearing were not a due process violation.[5]  Pl.'s Reply 1.  Rather, according to Mr. Hope, those events

_____

[4] HALLEX is an internal procedural document of the Social Security Administration.

[5] Out of an abundance of caution, the Court notes that even if the argument were preserved, it would fail.  While a claimant does have the right to fully question witnesses, that is not an unlimited right.  HALLEX I-2-6-74(C), 1993 WL 751902 (stating that "the ALJ will determine when they may exercise this right [to question witnesses] and the appropriateness of any questions asked or answers given").  Perhaps more determinative, Mr. Hope's attorney at the hearing said "that's it" and never suggested—through objection or otherwise—that she had anything else to ask the expert.  *See, e.g.*, *Glass v. Shalala*, 43 F.3d 1392, 1396-97 (10th Cir. 1994) (holding that a claimant waived her right to cross-examine a witness where counsel asserted that he did not object to the witness's testimony and counsel had nothing further for the ALJ's consideration).  Here, in light of the opportunity to question the expert (albeit under time

illustrate, the ALJ's failure adequately to develop the record regarding whether Mr. Hope could perform the jobs identified by the vocational expert. *Id.*

"[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point." *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999). One potentially "valid explanation [for a discrepancy] would be that a specified number or percentage of a particular job is performed at a lower RFC level than the Dictionary shows the job generally to require." *Id.* at 1091-92 (citing *Fenton v. Apfel*, 149 F.3d 907, 911 (8th Cir.1998) (explaining that the Dictionary gives maximum requirements of job as generally performed, not a range of requirements as the job is performed in various particular settings)). The regulations flesh out this requirement. The Social Security Rulings state that before relying on the testimony of a vocational expert, an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [the expert] and information in the [DOT], including its companion publication, the [SCO]." SSR 00-4p.

In this case, the ALJ asked the expert for the basis of her testimony. The expert testified that she based her conclusions on the Dictionary of Occupational Titles, with the exception of her testimony regarding the reductions in the number of available positions based on the additional limitations in the residual functional capacity. R. 81. For those reductions, she plugged the information from the hypothetical question into the Selected Characteristics of Occupations (SCO). This colloquy appears to fall squarely within the requirements under

---

constraints) and hearing counsel's statement that she had nothing further, there is no reason to believe the ALJ did anything to violate Mr. Hope's due process rights.

*Haddock* and SSR 00-4p.  That the expert relied on the DOT's companion volume, the SCO, to reach her conclusions makes no difference.  The expert did not identify any discrepancies that could not be explained by reference to the SCO, so the ALJ satisfied her duties at this step.

<u>Residual Functional Capacity</u>

Mr. Hope argues that the ALJ's chosen residual functional capacity does not "take into account all of his limitations."  Specifically, he challenges the ALJ's decision to give little weight to Dr. Eulberg's opinions about Mr. Hope's exertional limitations.  Pl.'s Br. 8.

As a foundational matter, the ALJ is required to consider "every medical opinion [he or she] receive[s]."  20 C.F.R. § 404.1527(c).  Considering the opinion requires an explanation of the weight it received.  20 C.F.R. § 404.1527(c)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).  An ALJ may discount a medical opinion in the record if that opinion is based on subjective reports rather than objective medical evidence.  20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").  It is also permissible for an ALJ to discount a medical opinion where that opinion is inconsistent with the claimant's treatment records or the opinions of other medical professionals in the record.  20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *see also Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (holding that an ALJ reasonably discounted the opinion of a treating physician that was inconsistent with other medical evidence in the record).

Here, Dr. Eulberg was unable to diagnose post-polio syndrome and suspected symptoms related to Mr. Hope's diabetes.  R. 571.  She did, however, ultimately reach a functional capacity assessment that was relatively limited compared to those prepared by other physicians who

evaluated Mr. Hope.  R. 571 (described above).  Unlike the other physicians whose opinions received great weight, however, Dr. Eulberg based her conclusions in large part on Mr. Hope's self-reports.  R. 569-70.  There is no evidence that she conducted any tests of Mr. Hope's exertional limits during her evaluation.  Additionally, her conclusions ran counter to most of the rest of the record.  Dr. Reasoner and Dr. Sharma, for example, both concluded that Mr. Hope was able to lift and carry between 25 and 40 pounds.  R. 304, 308, 390.  Dr. Simpson, the surgeon who operated on Mr. Hope twice, concurred with these assessments.  R. 283.  None of these doctors ever identified limitations on walking, standing, or sitting.

Mr. Hope's physical therapists offer similar conclusions.  R. 266 (in February 2010 he could work at light to medium level); R. 495-98 (in March 2011, Dr. Boatright concluded Mr. Hope could sit, stand, or walk for six to eight hours, lift up to 20 pounds occasionally, could continuously reach, handle, finger, feel, push, and pull with his left hand, though he would not be able to reach overhead with his left arm); R. 546 (in April 2011 after his second surgery, Dr. Goldman concluded that he could return to sedentary work within a few weeks and within a year could return to medium work with lifting between 35 and 50 pounds); R. 96-97 (in July 2010 a non-examining physician concluded that Mr. Hope could frequently lift up to 20 pounds, walk and stand six hours in a workday, and would have minimal limitations on his left extremity but no limit on gross manipulation, fine manipulation, or feeling).

Dr. Eulberg's opinion was based on Mr. Hope's subjective self-reports and was contradicted by the rest of the medical evidence in the record.  Looked at in context and with reference to the regulations cited above, it was reasonable for the ALJ to give that opinion little weight before arriving at her RFC.

New Evidence for the Appeals Council

Mr. Hope included new evidence in his petition to the Appeals Council.  In his appeal to this Court, he argues that some of this evidence—namely assessments by physician assistant Kyle Stewart and Action Potential Therapy—constituted substantial evidence that the ALJ reached the wrong conclusion regarding Mr. Hope's residual functional capacity.  Pl.'s Br. 6-9.  After reviewing the new evidence, this Court concludes that the Appeals Council properly upheld the ALJ's decision and declined further review.

When a claimant submits new evidence to the Appeals Council, the Council

shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.  The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.  It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b); *see also Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006).  If the Appeals Council considers new evidence, then a reviewing district court's "task is to determine whether the qualifying new evidence upsets" the ALJ's decision. *Martinez v. Astrue*, 389 F. App'x 866, 869 (10th Cir. 2010).

The supplemented record contains notes from Kyle Stewart, a physician assistant at Peak Vista Community Health, in which Mr. Stewart agrees with Dr. Eulberg's report and recommendations.  R. 600.  These notes, however, are based on Mr. Hope's self-reports and not on objective medical evidence regarding any potential limitations.  Moreover, the note concurring with Dr. Eulberg says nothing besides the conclusory statement that Mr. Stewart concurs with Dr. Eulberg.  And ultimately, these conclusions are contradicted by numerous other

medical opinions as discussed above.  Each of these factors could have justified giving Mr.

Stewart's opinion low weight.  *See* 20 C.F.R. § 404.1527(c)(3), (4) (discussing the supportability

and consistency of an opinion as considerations in how much weight to assign it).  The ALJ, if

she had had these notes available to her, very well may have reached the conclusion that Mr.

Hope was not disabled.

Mr. Hope also suggests that a newly added functional capacity assessment from Action

Potential Therapy undermines the ALJ's decision.  That assessment, according to Mr. Hope,

placed him in the sedentary work level and concluded that Mr. Hope could be on his feet for

fewer than five hours per workday.  Pl.'s Br. 7; R. 572-88.  The Commissioner, however,

counters correctly that Action Potential Therapy actually placed Mr. Hope in the light-medium

physical demand level, R. 572, 579-80, and therefore the new evidence does not contradict the

ALJ's conclusion.[6]  To be sure, Action Potential's limitation on walking and standing is

inconsistent with the ALJ's ultimate determination in the residual functional capacity.  However,

the ALJ's determination is supported by the opinions of Dr. Reasoner and Dr. Sharma who both

indicated that Mr. Hope had no limitations on standing or walking, and Dr. Boatright and Dr.

Blando who both indicated that Mr. Hope could stand or walk for up to eight hours in a workday.

Thus, there was substantial evidence supporting the ALJ's decision, even in light of this new

evidence.

---

[6] Perhaps Mr. Hope meant to point to the assessment performed by Dr. Gerig which suggested he
could perform only less than sedentary work.  R. 15-17.  Even if this is the evidence Mr. Hope
had in mind, it is still not enough to contradict substantial evidence in record.  Apart from Dr.
Eulberg's opinion, Dr. Gerig's opinion is the only other evidence in the record that suggests such
a limited range of functioning.  Its addition to the record, coupled with the countervailing
evidence from Action Potential Therapy that Mr. Hope could perform light to medium work,
does not alter the substantial evidence in the record.

**Conclusion**

After examining the ALJ's opinion, the record, and briefing from both parties, I conclude

that the ALJ applied the correct legal standards and reached a decision supported by substantial

evidence.

**Order**

The decision of the Commissioner is affirmed.

DATED this 22nd day of January, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge